AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.     8:25-MJ-1131-AAS |
| Frank Jude Petrone, Sr. | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ October 17, 2024 _____ in the county of _____ Manatee _____ in the

_____ Middl _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 933(a)(1) | Trafficking a Firearm |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joshua Dominguez, ATF Special Agent
_____
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me
pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:  January 27, 2025

_____
*Judge's signature*

City and state:          Tampa, Florida

Amanda Arnold Sansone, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT
## OF A CRIMINAL COMPLAINT

I, Joshua Dominguez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed by the United States Department of Justice since May 2022. I have approximately three years of law enforcement training and experience. This training and experience include, but is not limited to, employment with the Arizona State University Police Department as an Emergency Dispatcher for approximately one year. Upon being hired by ATF, I completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and ATF Special Agent Basic Training program.

2.     I am authorized to investigate violations of laws of the United States, including violent crimes, firearm trafficking offenses, and to execute warrants issued under the authority of the United States. I am currently assigned to the ATF Tampa Division. During my employment as an ATF Special Agent, I have participated in numerous investigations which have resulted in the arrests of numerous individuals and the seizures of firearms and ammunition. During these investigations, I have conducted or participated in interviews, and conducted numerous debriefings of witnesses, informants, cooperating defendants, and other individuals cooperating with the United States.

3.      I know from my training and experience that mitigating the illegal flow of firearms is necessary to reduce the threat to public safety. The Gun Control Act ("GCA") sets forth a lengthy and detailed framework regarding who may sell, possess, purchase, manufacture, or transfer firearms. There is a marked difference between the steps necessary to control a gun compared to those necessary to exercise control over illegal narcotics. Firearms are a legal commodity in the United States, and citizens have a constitutional right to own them. Once a gun is in someone's hands, it only takes a split second to pull the trigger. When Congress enacted the GCA, it reiterated that the principal purposes were to keep firearms out of the hands of those not legally entitled to possess them, and to assist law enforcement in their "fight against crime and violence."[1] ATF defines a "crime gun" as any firearm that is illegally possessed, involved in a crime, or suspected to have been involved in a crime.

4.      The GCA prohibits convicted felons and other categories of prohibited persons from possessing firearms due to potential dangerousness. As part of that effort, the ATF Background Check Form 4473 must be completed before a federally licensed firearms dealer (gun dealer) sells or transfers a firearm. It also imposes record-keeping requirements on gun dealers, including that gun dealers record the actual buyer of the firearm to assist law enforcement authorities in investigating gun crimes through the tracing of guns back to the buyer. The illegal trafficking or straw

---

[1] Gun Control Act of 1968, § 101, Pub. L. No. 90-618, 82 Stat. 1213.

purchasing of a firearm circumvents the critical background check required of gun dealers in their gatekeeping role of verifying, at the point of sale, whether a potential buyer may lawfully own a gun. The gun can then be used for criminal purposes without fear that law enforcement will later trace it to the actual (or true) buyer. This also deceives the gun dealers with respect to facts material to the lawfulness of their firearms sales. The GCA provisions would mean little if a would-be gun buyer could evade them by enlisting the aid of an intermediary or "straw purchaser" to complete the paperwork on their behalf, thus undermining this important crime prevention tool.

5.    I know from my training and experience that altering or obliterating the firearm serial number is often utilized by persons attempting to evade detection. This disrupts law enforcement's ability to trace firearms used in crimes, which is crucial in crime prevention and solving cases. Indeed, the only reason to possess such a firearm is to evade detection by law enforcement.

6.    I submit only those facts believed to be relevant in the determination of probable cause, and this affidavit should not be construed as a complete statement of all the facts in this investigation.

7.    I submit this affidavit in support of a Criminal Complaint charging Frank Jude PETRONE, Sr. (DOB: 06/15/1969) with trafficking a firearm in violation of 18 U.S.C. § 933(a)(1).

## PROBABLE CAUSE

8.    On or about October 2, 2024, the Manatee County Sheriff's Office notified ATF that a confidential informant (the "CI")[2] knew an individual who, in turn, knew that the CI was a convicted felon and had sold firearms to the CI for U.S. currency and narcotics in the past. The CI later identified that seller as Frank Jude PETRONE, Sr. (DOB: 06/15/1969).

9.    PETRONE is currently employed by, and is a responsible party at, a gun store in Sarasota, Florida, also within the Middle District of Florida. Because PETRONE works for a licensed gun dealer and actively partakes in the sale of firearms, he knows or should know that a convicted felon is prohibited from possessing a firearm and would not pass the National Instant Criminal Background Check System ("NICS") from a licensed gun dealer.

10.    On three separate occasions between October 2024 and January 2025, ATF agents and Manatee County Sheriff's deputies used the CI to purchase three firearms and one hundred and seventeen rounds of ammunition from PETRONE. Before each deal, ATF agents and Manatee County Sheriff's deputies searched the

---

[2] The CI has eleven felony convictions for dealing in stolen property and theft and is cooperating with law enforcement for consideration on pending state charges for Trafficking of Oxycodone, Possession of Fentanyl, Possession of Morphine, and Possession of Drug Paraphernalia. The CI has provided information concerning criminal activity to ATF for approximately three months. The CI has provided information relevant to this investigation since approximately October 17, 2024. During that time, ATF agents have independently corroborated the information that the CI provided them, and ATF agents believe that the information the CI has provided is credible, reliable, and truthful. The Manatee County Sheriff's Office has also advised the ATF that their deputies have independently corroborated the information that the CI provided them, and the deputies believe that the information the CI has provided is credible, reliable, and truthful.

CI and the CI's vehicle to confirm that the CI did not possess any unauthorized firearms, ammunition, narcotics, or currency. Each search yielded negative results. Manatee County Sheriff's Office detectives then provided the CI with recorded U.S. currency to exchange for the firearms and ammunition and equipped the CI and the CI's vehicle with video and audio recording devices. ATF agents and Manatee County Sheriff's deputies also visually surveilled the undercover purchases. After the purchases, ATF agents recovered the firearms and ammunition and again searched the CI and CI's vehicle for any unauthorized additional firearms, ammunition, narcotics, or currency. Those searches also yielded negative results. These purchases took place in a public parking lot located in Manatee County, within the Middle District of Florida. In my training and experience, illegal firearms transactions are often conducted outside of premises where firearms are sold for a lawful purpose—i.e., a licensed dealership. The purchases are additionally described below.

11.    On October 17, 2024, PETRONE sold a firearm (Taurus International 605 Poly Protector revolver, chambered in .357, bearing serial number AEK736227) and ten rounds of .357 ammunition to the CI for $360[3] in U.S. currency. At

_____

[3] The Manufacturer's Suggested Retail Price ("MSRP") of the Taurus International 605 Poly Protector revolver chambered in .357 is $416.99. PETRONE purchased this firearm as part of a multiple sale. The GCA permits ATF to maintain "multiple sale" records of firearms transactions where two or more sales of a pistol or revolver occurred to the same person, during any five (5) consecutive business days. 18 U.S.C. § 923(g)(3)(A). I reviewed the multiple sale record for PETRONE's purchase of this Taurus International 605 Poly Protector revolver. It showed that PETRONE purchased it at a gun show on September 14, 2024. Based on my training and experience, I know that vendors at gun shows often sell firearms well below MSRP because the vendors compete on price, potential buyers are price-sensitive, and vendors frequently expect to make up lower margins by selling a higher volume of firearms.

approximately 7:03:21 p.m., PETRONE entered the CI's vehicle. At approximately

7:03:38 p.m., PETRONE stated ".357, okay, and then we got hollow fucking points,

okay, wipe your fucking fingerprints off the fucking bullets." The CI then stated

"with my past felony convictions I have right, they're trying to fucking railroad my

ass right now ... I don't know what to do at this point." PETRONE responded "take

this, wipe the bullets off, get in this fucking truck, and drive." At approximately

7:04:24 p.m., PETRONE took the U.S. currency from the CI. Based on my training

and experience, I believe that PETRONE understood the CI was a convicted felon.

The CI plainly stated they had past felony convictions and current pending felony

charges. PETRONE's response recommending the CI "wipe off the bullets" indicates

that he knew that convicted felons are not able to possess firearms or ammunition

and completed the sale despite that knowledge. The Taurus revolver was purchased

by PETRONE on September 20, 2024, as a part of a multiple sale purchase, making

the TTC 27 days.

12.     On November 8, 2024, PETRONE sold a firearm (Sig Sauer M18 semi-

automatic pistol, chambered in 9mm, bearing serial number TC523392) and fifty-

seven rounds of 9mm ammunition to the CI for $800[4] of U.S. currency. During the

transaction, PETRONE mentioned he used the money from the CI's last purchase to

---

[4] The MSRP of the Sig Sauer M18 semi-automatic pistol chambered in 9mm is $649.99. A
multiple sale record indicates that PETRONE purchased the Sig Sauer M18 semi-automatic pistol
from a gun dealer on September 24, 2024. PETRONE is employed by that gun dealer. Based on my
training and experience, I know that many gun dealers provide employees with discounts for
purchases at their stores.

buy a new revolver. Based on my training and experience, I interpret PETRONE's

statement to mean that he made a profit from reselling the Taurus International 605

Poly Protector revolver to the CI. PETRONE also mentioned having a machine gun

in his possession. This transaction was audio and video recorded. The Sig Sauer

semi-automatic pistol was purchased by PETRONE on October 7, 2024, as a part of

a multiple sale purchase, making the TTC 32 days.

13.    On January 2, 2025, PETRONE sold a firearm (TISAS 1911A1 semi-

automatic pistol, chambered in .45 auto, bearing serial number T0620-24Z17780)

and fifty rounds of .45 auto ammunition to the CI for $600[5] of U.S. currency. During

the transaction, PETRONE offered to sell the CI a machine gun with an obliterated

serial number for $4,000 at a future date. PETRONE mentioned that he has several

loaded magazines for the machine gun that PETRONE offered to sell to the CI at his

home, which I know to be 16615 Southern Oaks Trail, Parrish, Florida 34219. This

transaction was audio and video recorded.

14.    The GCA permits ATF to maintain sale records of handgun

transactions where the same person purchased two or more pistols or revolvers

during any five (5) consecutive business day span. 18 U.S.C. § 923(g)(3)(A).

According to tracing statistics from ATF's Crime Gun Intelligence Center (CGIC)

program, handguns that are part of a multiple sale are more likely to be used in

crimes rather than handguns sold alone. A short "time to crime," correlates with the

---

[5] The MSRP of the TISAS 1911A1 semi-automatic pistol chambered in .45 auto is $429.99.

purchaser's planned illegal diversion or otherwise criminal intent with respect to the purchased firearms. Those same reports indicate that the 9-millimeter semi-automatic pistol is the most frequently traced type of gun recovered in crimes.

15.    On January 24, 2025, ATF Special Agent and Firearms and Ammunition Specialist Jeffrey Burt conducted an examination of the below listed firearms and ammunition:

- Taurus International, Model 605 Poly Protector revolver, chambered in .357 with serial number AEK736227 (purchased on October 17, 2024);

- Five rounds of Speer brand .357 ammunition (purchased on October 17, 2024);

- Five rounds of G.F.L. brand .357 ammunition (purchased on October 17, 2024);

- Sig Sauer, Model M18 semi-automatic pistol, chambered in 9mm with serial number TC523392 (purchased on November 8, 2024);

- Trabzon Gun Industry Corp. (TISAS), Model 1911A1 semi-automatic pistol, chambered in .45 auto with serial number T0620-24Z17780 (purchased on January 2, 2025); and

- Fifty rounds of CBC brand .45 auto ammunition (purchased on January 2, 2025).

16.    Based upon ATF Firearms and Ammunition Specialist Jeffrey Burt's examination of and research about the above-described weapons, as well as his

8

knowledge, training, and experience, he believes the above-described weapon is a firearm as defined in 18 U.S.C. § 921(a)(3).

17. Further, Special Agent Jeffrey Burt opined the above-described firearms were not manufactured in the State of Florida. To his knowledge, none of the manufacturers listed above have any manufacturing facilities in the State of Florida. Therefore, the firearms would have had to travel in or affect interstate or foreign commerce prior to its recovery in the State of Florida.

18. Based on the foregoing, I believe there is probable cause that on or about October 17, 2024, November 8, 2024, January 2, 2025, Frank Jude PETRONE, Sr. did knowingly transfer a firearm affecting interstate commerce to a convicted felon in violation of 18 U.S.C. § 933(a)(1). By shipping, transporting, transferring, or causing to be transported, or otherwise disposing of a firearm to a person for whom PETRONE knew or reasonably believed that such receipt would

constitute a felony, PETRONE engaged in conduct that section 933(a)(1) of the Stop

Illegal Trafficking in Firearms Act was meant to prevent, thus clearly endangering

the community. These violations occurred within the Middle District of Florida.

Respectfully submitted,

Joshua Dominguez
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Affidavit submitted to me by reliable electronic means and attested to me as true and
accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1
and 4 (d) before me this __27__ day of January 2025.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

10