**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                        **Case No.: 8:25-cr-70-WFJ-CPT**

**FRANK JUDE PETRONE, SR.**
_____ /

## SENTENCING MEMORANDUM IN SUPPORT OF A DOWNWARD VARIANCE AND REQUEST FOR PROBATION

COMES NOW the Defendant, Frank Jude Petrone, Sr., by and through undersigned counsel, and respectfully submits this memorandum in support of his request for a downward variance from the advisory guideline range and for the imposition of a sentence of probation. For the reasons set forth below, a sentence of probation is "sufficient, but not greater than necessary" to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

### I. STATEMENT OF FACTS

Mr. Petrone is a 56-year-old lifelong resident of the United States, married for over 30 years, and the father of three adult children. PSR ¶¶51-52, 54. He has maintained stable employment, most recently as a roofer and previously as a sales representative and manager. PSR ¶¶70-75. He resides in Parrish, Florida, with his wife and son, in a home they own, and enjoys strong support from his immediate and extended family. PSR ¶¶53-54.

On October 31, 2025, Mr. Petrone pled guilty to one count of trafficking in firearms, in violation of 18 U.S.C. §§ 933(a)(1) and 933(b), and four counts of sale of a firearm and ammunition to a felon, in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(8). PSR ¶8. The offense conduct involved four transactions between October 2024 and January 2025, during which Mr. Petrone, while employed by a licensed gun dealer, sold firearms and ammunition to a known felon. PSR ¶¶10-22. He admitted his conduct, expressed remorse, and submitted a letter of apology. PSR ¶¶25.

Mr. Petrone suffers from significant and chronic health conditions, including hypertension, hyperlipidemia, sleep apnea, a history of a broken neck, and a quadruple bypass surgery in November 2021. PSR ¶¶57-61. He requires multiple daily prescription medications and ongoing medical supervision. *Id.*

He has demonstrated exemplary compliance with all conditions of pretrial release, including regular reporting, negative substance abuse testing, and maintaining stable residence and employment. PSR at 1, ¶¶9.

## II. ADVISORY GUIDELINE CALCULATIONS

The Presentence Investigation Report calculates a total offense level of 21, after a three-level reduction for acceptance of responsibility. Mr. Petrone is objecting to a two-level increase in the Specific Offense Conduct, if the Court grants his objection his Total Offense Level would be 19. With a

criminal history category of I, the advisory guideline range would be 30-37 months. PSR ¶¶32-42, Addendum to PSR at 2. Mr. Petrone objects to the PSR calculation of the guidelines on the following grounds:

### A. The Base Offense Level of 20 at USSG 2k2.1(a)(4)(B)(i)(I), (ii)(II) and the Specific Offense Characteristic (+2) at USSG 2k2.1(b)(6)(B)(i)(I) are Impermissible Double Counting.

The application of a Base Offense Level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B) and a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) constitutes impermissible double counting when both provisions are triggered by the identical conduct—the transfer of firearms to a prohibited person—which is the essential element of the underlying conviction under 18 U.S.C. § 933.

Impermissible double counting occurs when "one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Dudley*, 463 F.3d 1221, 1226-27 (11th Cir. 2006). While the Sentencing Guidelines are generally applied cumulatively, an enhancement is impermissible if it punishes a harm already "baked into" the base offense level or another specific offense characteristic.

Under U.S.S.G. § 2K2.1(a)(4)(B), a defendant receives a Base Offense Level (BOL) of 20 if the offense involved a semiautomatic firearm capable of

accepting a large capacity magazine and the defendant "is convicted under...

18 U.S.C. § 933."

Under U.S.S.G. § 2K2.1(b)(6)(B), a two-level increase applies if the

defendant "disposed of... a firearm... knowing or having reason to believe that

such conduct would result in the receipt of the firearm... by an individual who

was a prohibited person." This section mirrors the language of 18 U.S.C. 933.

In this case, the government and the Probation Office argue that these

two sections punish "different conduct": one punishing the "danger of the

magazines" and the other punishing the "knowledge of the recipient's status."

This distinction is a legal fiction that ignores the plain language of the

statutes and the "but for" causation of the guidelines.

First, the BOL of 20 is not triggered solely by the type of firearm. As

the PSR admits, if the firearms did not have large capacity magazines, the

BOL would be 14. However, it is equally true that if the defendant were not

convicted under 18 U.S.C. § 933, the BOL would also be significantly lower. A

conviction under § 933 requires as an element of the offense that the

defendant transferred a firearm to a person whose possession of such firearm

would be a felony (i.e., a prohibited person). Therefore, the "prohibited

person" aspect of the conduct is a condition precedent to the application of

BOL 20.

Second, the Specific Offense Characteristic (SOC) at § 2K2.1(b)(6)(B) punishes the exact same harm: the transfer of a firearm to a prohibited person. The Probation Office argues that the BOL accounts for the conviction while the SOC accounts for the knowledge. This is a distinction without a difference. To be convicted under § 933, the defendant must necessarily have acted with the requisite intent and knowledge regarding the illegal nature of the transfer to a person who cannot lawfully possess firearms.

By using the § 933 conviction to jump the BOL from 14 to 20, the Guidelines have already "fully accounted for" the harm of arming a prohibited person. To then apply a two-level enhancement under (b)(6)(B) for "knowing" the recipient was a prohibited person punishes the defendant twice for the same fundamental fact. If you subtract the "prohibited person" element, the § 933 conviction vanishes, the BOL of 20 vanishes, and the SOC enhancement vanishes. Because the same nucleus of operative fact—selling to a person known to be a felon—is the sole engine driving both the elevated BOL and the SOC, the result is a cumulative punishment for a single harm.

Because the defendant's conviction under 18 U.S.C. § 933 already serves as the mandatory predicate for the elevated Base Offense Level of 20, the additional application of the § 2K2.1(b)(6)(B) enhancement for the same conduct constitutes impermissible double counting. The harm of transferring firearms to a prohibited person, was fully accounted for in the BOL.

Accordingly, the defendant respectfully requests that the Court sustain the objection and decline to apply the two-level enhancement under § 2K2.1(b)(6)(B).

### III. APPLICATION OF 18 U.S.C. § 3553(a) FACTORS AND ARGUMENT FOR PROBATION

#### A. Legal Framework: The Guidelines Are Advisory and the Court's Authority to Vary

The Supreme Court has repeatedly affirmed that the United States Sentencing Guidelines are advisory, not mandatory. See *United States v. Booker*, 543 U.S. 220, 245 (2005); *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The Court must consider the Guidelines and all relevant factors under 18 U.S.C. § 3553(a), but retains broad discretion to impose a sentence outside the guideline range if warranted by the facts and circumstances of the case. *Gall*, 552 U.S. at 51. The ultimate mandate is that the sentence be "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

#### B. Nature and Circumstances of the Offense

The nature and circumstances of Mr. Petrone's offense, while serious, are markedly less aggravated than those typically seen in firearms trafficking cases. The conduct at issue involved four transactions over a three-month period, during which Mr. Petrone, while employed at a licensed

gun dealer, sold firearms and ammunition to a known felon. Critically, there is no evidence that Mr. Petrone's conduct involved violence, threats, or any aggravating factors beyond the elements of the offense. The defense specifically objects to the PSR's suggestion that Mr. Petrone accepted drugs in exchange for firearms, categorically denying this claim. Addendum to PSR at 1. The defense also objects to any implication that Mr. Petrone sold firearms to facilitate other crimes, as there is no reliable evidence to support such an assertion and it is not relevant to the offense of conviction. *Id.*

Mr. Petrone's conduct was isolated and not part of an ongoing criminal enterprise. He did not profit substantially, nor did he occupy a leadership role or engage in sophisticated criminal activity. Upon being confronted by authorities, Mr. Petrone immediately admitted his conduct, expressed genuine remorse, and submitted a letter of apology. PSR ¶25. He has fully accepted responsibility for his actions, as reflected in the three-level reduction applied in the guideline calculation. PSR ¶29. Mr. Petrone's cooperation with authorities and prompt acceptance of responsibility further distinguish his case from more egregious offenders.

## C. History and Characteristics of the Defendant

Mr. Petrone's personal history is marked by stability, responsibility, and a lifelong commitment to his family and community. He is a 56-year-old lifelong resident of the United States, married for over 30 years, and the

father of three adult children. He resides in Parrish, Florida, with his wife and son in a home they own, and has maintained steady employment, most recently at Quantum Facilities Services, LLC, earning $2,400 per month. PSR ¶70, ¶76.

The letters of support submitted as Exhibit A provide compelling evidence of Mr. Petrone's positive character and the depth of his family and community ties. His wife, Gina Petrone, describes him as "a good man that always puts others before himself," recounting his sacrifices to support the family during times of hardship and emphasizing that "family is his purpose." Exhibit A at 2. His daughter, Dominica Petrone, calls him "the most selfless person I know," highlighting his generosity and willingness to help others in need, even at personal cost. Exhibit A at 4. His nephew, Thaddeus S. Kopec Jr., describes Mr. Petrone as "a father figure" who provided stability and guidance during difficult times, always offering help to friends and family. Exhibit A at 6. Friends and colleagues, including Paul S. Crawford, Leslie Olsen, and Kristen Bard, unanimously attest to Mr. Petrone's honesty, reliability, and positive influence in the workplace and community. Exhibit A at 8-10. Mr. Petrone as a devoted husband, father, and community member. Exhibit A, B.

Mr. Petrone's criminal history is minimal, consisting of a single conviction from 1999 for operating a motor vehicle impaired by drugs or

alcohol, which resulted in a conditional discharge and no criminal history points. PSR ¶44. He has no history of violence or recidivism, and his risk of reoffending is exceedingly low.

Mr. Petrone's health is poor and precarious. He underwent quadruple coronary artery bypass grafting on November 4, 2021, for severe coronary artery disease. Exhibit C. He suffers from hypertension, with blood pressure readings in the range of 130–139/80–89 mmHg as of May 20, 2025, and hyperlipidemia, managed with atorvastatin. Exhibit C. He has a history of cervical spine surgery and chronic respiratory disease requiring daily use of Spiriva and ProAir inhalers. Exhibit C. His complex medication regimen includes amlodipine, metoprolol succinate, aspirin, nitroglycerin, and potassium chloride. Exhibit C. Mr. Petrone's treating physicians at Intercoastal Medical Group have documented the ongoing need for daily cardiovascular and antihypertensive medications, regular monitoring, and immediate access to emergency medications. Exhibit C. Incarceration would pose substantial risks to his health due to the likelihood of inadequate access to necessary medications, specialty care, and the increased risk of acute cardiac or respiratory events in a custodial setting. Exhibit C.

Mr. Petrone has demonstrated exemplary compliance with all conditions of pretrial release, including regular reporting, negative substance abuse testing, and maintaining stable residence and employment. His post-

offense conduct reflects genuine rehabilitation and a commitment to lawful behavior.

### D. The Need for the Sentence Imposed

#### 1. To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

A sentence of probation would adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment, particularly in light of Mr. Petrone's acceptance of responsibility, lack of criminal history, and the significant collateral consequences he has already suffered. *See Gall v. United States*, 552 U.S. 38, 54 (2007) (affirming probation as a just sentence for a serious offense where mitigating factors are present). Mr. Petrone's conviction has resulted in the loss of his employment in the firearms industry, reputational harm, and the emotional toll of federal prosecution. These consequences, combined with the ongoing supervision and restrictions of probation, are sufficient to achieve the purposes of punishment.

#### 2. To Afford Adequate Deterrence and Protect the Public

Mr. Petrone's conduct was aberrational, and his strong family and community ties, stable employment, and demonstrated remorse make him an exceptionally low risk for recidivism. The letters of support from family, friends, and employers unanimously describe him as selfless, compassionate,

and a positive influence, further supporting the conclusion that he is unlikely to reoffend. General and specific deterrence will be served by a sentence of probation, which remains a significant sanction and deterrent to others. Lengthy incarceration is unnecessary to achieve deterrence for this defendant, who is at exceptionally low risk of reoffending.

### 3. To Provide Needed Medical Care

Mr. Petrone's severe and chronic health conditions; including a history of quadruple bypass surgery, hypertension, hyperlipidemia, COPD, and cervical spine surgery; require ongoing management with a complex medication regimen and regular monitoring by his treating physicians. The Bureau of Prisons is ill-equipped to provide the level of care required for his cardiac and respiratory conditions, and incarceration would pose substantial risks to his health, including the possibility of acute cardiac or respiratory events due to interruptions in medication or inadequate access to specialty care. Probation would allow Mr. Petrone to continue receiving the specialized medical care he needs in the community.

### E. The Need to Avoid Unwarranted Sentencing Disparities

A sentence of probation would not create unwarranted disparities, but rather would reflect the individualized assessment required by § 3553(a). The Court's sentence should be "sufficient, but not greater than necessary" to achieve the purposes of sentencing, and should account for the unique

constellation of mitigating factors present in Mr. Petrone's case.

In summary, the totality of the circumstances including the nonviolent and isolated nature of the offense, Mr. Petrone's minimal criminal history, overwhelming family and community support, severe health conditions, and exemplary post-offense conduct warrant a downward variance to probation. Such a sentence is fully supported by the law, the facts, before the Court.

## IV. CONCLUSION

For all the foregoing reasons, Mr. Petrone respectfully requests that the Court impose a sentence of probation. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing under 18 U.S.C. § 3553(a), and is fully supported by the facts and law.

DATED this 31st day of March 2026.

Respectfully submitted,

CHARLES L. PRITCHARD, JR.
FEDERAL PUBLIC DEFENDER

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender
Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602
Telephone:  (813) 228-2715
Facsimile:   (813) 228-2562
Email: ryan_maguire@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of March 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Adam McCall, AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender
